ROBINSON, APPELLEE, *v.* BATES, TRUSTEE, APPELLANT.

[Cite as *Robinson v. Bates,* 112 Ohio St.3d 17, 2006-Ohio-6362.]

(No. 2005–0998—Submitted March 29, 2006—Decided December 20, 2006.)

──────────

──────────

LANZINGER, J.

{¶ 1} In this case, accepted on a discretionary appeal, we conclude that the collateral-source rule does not apply to bar evidence of the amount accepted by a medical care provider from an insurer as full payment for medical or hospital treatment. Both the amount originally billed by the provider and the amount paid by the insurer are admissible to prove the reasonable value of the medical treatment.

{¶ 2} On the evening of April 21, 2001, the appellee, Carolyn Robinson, broke a bone in her foot when she fell in the driveway of the residence she rented from the appellant, Helen Gist Bates, Trustee. Three to five days before Robinson's injury, an outside contractor, hired by Bates's grandson to do repair work, had removed a deteriorating retaining wall on the side of Robinson's driveway, exposing the concrete footer. Although she was aware of the construction, Robinson stepped onto an uneven slab of the footer and injured her foot.

{¶ 3} Robinson sued Bates for personal injury. During the trial, Robinson proffered her medical bills of $1,919. She stipulated that her insurance company had negotiated the amount of $1,350.43 as payment in full. The trial court refused to admit the original bills and limited her proof of damages to the amount that was actually paid for her medical treatment. At the conclusion of Robinson's case, the trial court granted a directed verdict for the defense, finding that Robinson had not established that Bates was negligent, since the existence of the concrete footer was open and obvious.

{¶ 4} The Court of Appeals for Hamilton County reversed the judgment, stating that a jury should have determined the matter because reasonable minds could conclude that Bates, as the landlord, had violated her duty under R.C. 5321.04(A)(2) to repair the leased premises and that she had therefore committed negligence per se. *Robinson v. Bates,* 160 Ohio App.3d 668, 2005-Ohio-1879, 828 N.E.2d 657, ¶ 13, 15. The court of appeals also held that the trial court had erred in refusing to admit the original medical bills. Id. at ¶ 27. Citing R.C. 2317.421 only in passing, it relied on the collateral-source rule to hold that Robinson was entitled to seek recovery of the entire amount of her medical bills, rather than simply the amount paid by her insurer. Id. at ¶ 85. The case was remanded for a new trial.

{¶ 5} The two issues before us in this discretionary appeal are (1) whether evidence of the amount accepted as full payment of a medical bill is barred by the collateral-source rule and (2) whether a landlord's statutory duty under R.C. 5321.04(A)(2) is excused if a hazardous condition results from the landlord's efforts to comply with that statute.

{¶ 6} The judgment of the court of appeals is affirmed with respect to the remand of this case, albeit for a different reason. Although the collateral-source rule does not bar evidence of the amount accepted as full payment for medical services, we hold that both the original medical bill rendered and the amount accepted as full payment for medical services should have been admitted pursuant to R.C. 2317.421. Furthermore, the jury must determine whether Bates violated her statutory duty to repair.

## Admissibility of Medical Bills

{¶ 7} We first consider what evidence a jury may consider in evaluating the reasonable value of medical expenses. In personal-injury cases, an injured party is entitled to recover necessary and reasonable expenses arising from the injury. *Wagner v. McDaniels* (1984), 9 Ohio St.3d 184, 9 OBR 469, 459 N.E.2d 561. Since those expenses include the reasonable value of the medical care required to treat the injury, the question is raised as to how to determine the reasonable value of the medical care. In *Wagner,* we held that "[p]*roof of the amount paid or the amount of the bill rendered* and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services. (*De Tunno v. Shull,* 166 Ohio St. 365, 143 N.E.2d 301 [2 O.O.2d 281, 143 N.E.2d 301], modified.)" (Emphasis added.) Id., paragraph one of the syllabus. Thus, either the bill itself or the amount actually paid can be submitted to prove the value of medical services.

{¶ 8} Medical bills are admissible in a personal-injury case, for "[a]ll relevant evidence is admissible." Evid.R. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to

the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Original bills are certainly evidence of the value that the medical providers themselves place upon their services.

{¶ 9} Furthermore, R.C. 2317.421 makes the bills prima facie evidence of the reasonable value of charges for medical services. R.C. 2317.421 states: "In an action for damages arising from personal injury or wrongful death, a written bill or statement, or any relevant portion thereof, itemized by date, type of service rendered, and charge, shall, if otherwise admissible, be prima-facie evidence of the reasonableness of any charges and fees stated therein * * *." Properly submitted medical bills are rebuttable evidence of reasonableness. Once medical bills are admitted, a defendant may then present evidence to challenge their reasonableness. *Wood v. Elzoheary* (1983), 11 Ohio App.3d 27, 28, 11 OBR 40, 462 N.E.2d 1243; see, also, *Stiver v. Miami Valley Cable Council* (1995), 105 Ohio App.3d 313, 320, 663 N.E.2d 1310. The trial court thus erred in refusing to allow the original medical bills to be admitted into evidence.

{¶ 10} In reversing and remanding this case, the Court of Appeals for Hamilton County remarked that Ohio courts generally admit proffered medical bills, allowing defendants to then rebut their prima facie evidence of necessity and reasonableness. 160 Ohio App.3d 668, 2005-Ohio-1879, 828 N.E.2d 657, ¶ 27. However, the court then continued its analysis to consider whether plaintiffs may recover the "written-off" portion of their medical bills under the collateral-source rule. A "write-off" is the difference between the original amount of a medical bill and the amount accepted by the medical provider as the bill's full payment. After examining the law of other jurisdictions and concluding that Ohio has no law limiting the collateral-source rule,[1] the court of appeals held that the "rule

---

1. {¶ a} We note that, effective April 7, 2005, the General Assembly passed R.C. 2315.20, a statute titled "Introduction of collateral benefits in tort actions." The purpose of this statute was to set forth Ohio's statement of law on the collateral-source rule. This new collateral-benefits statute does not apply in this case, however, because it became effective after the cause of action accrued and after the complaint was filed.

{¶ b} R.C. 2315.20 states:

{¶ c} "(A) In any tort action, the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the damages that result from an injury, death, or loss to person or property that is the subject of the claim upon which the action is based, except if the source of collateral benefits has a mandatory self-effectuating federal right of subrogation, a contractual right of subrogation, or a statutory right of subrogation or if the source pays the plaintiff a benefit that is in the form of a life insurance payment or a disability payment. However, evidence of the life insurance payment or disability payment may be introduced if the plaintiff's employer paid for the life insurance or disability policy, and the employer is a defendant in the tort action.

{¶ d} "(B) If the defendant elects to introduce evidence described in division (A) of this section, the plaintiff may introduce evidence of any amount that the plaintiff has paid or contributed to secure the plaintiff's right to receive the benefits of which the defendant has introduced evidence.

applies to any written-off amount agreed to by a plaintiff's health-care provider and insurer." *Id.* at ¶ 83. The court of appeals reasoned that the collateral-source rule applied to the write-off because the amount written off was a benefit to the plaintiff. Although the court of appeals correctly held that the excluded bills were prima facie evidence of reasonable value under R.C. 2317.421, it improperly applied the collateral-source rule in this case.

{¶ 11} The collateral-source rule was identified in Ohio in *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235. The rule is an exception to the general rule that in a tort action, the measure of damages is that which will compensate and make the plaintiff whole. *Id.* at 107, 52 O.O.2d 395, 263 N.E.2d 235, citing *Lawrence RR. Co. v. Cobb* (1878), 35 Ohio St. 94, and *Mahoning Valley Ry. Co. v. DePascale* (1904), 70 Ohio St. 179, 71 N.E. 633; see 25 Corpus Juris Secundum (2002) 1012, Damages, Section 99(1). *Pryor* involved a plaintiff who received reduced wages from her employer while she was unable to work because of a tortfeasor's negligence. We explained that under the collateral-source rule, the plaintiff's receipt of benefits from sources other than the wrongdoer is deemed irrelevant and immaterial on the issue of damages. *Id.* at 109, 52 O.O.2d 395, 263 N.E.2d 235. The rule prevents the jury from learning about a plaintiff's income from a source other than the tortfeasor so that a tortfeasor is not given an advantage from third-party payments to the plaintiff. *Id.* at 108, 52 O.O.2d 395, 263 N.E.2d 235.

{¶ 12} When the collateral-source rule has been raised as an issue, other jurisdictions have come to different conclusions about the amount that a plaintiff may recover for medical expenses. Ten state courts have concluded that plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, including amounts written off from the bills pursuant to contractual rate reductions. E.g., *Lindholm v. Hassan* (D.S.D.2005), 369 F.Supp.2d 1104, 1110; *Mitchell v. Haldar* (Del.2005), 883 A.2d 32, 40; *Hardi v. Mezzanotte* (D.C.App.2003), 818 A.2d 974, 985; *Olariu v. Marrero* (2001), 248 Ga.App. 824, 825, 549 S.E.2d 121; *Bynum v. Magno* (2004), 106 Hawaii 81, 92, 101 P.3d 1149; *Arthur v. Catour* (2004), 345 Ill.App.3d 804, 807, 281 Ill.Dec. 243, 803 N.E.2d 647; *Wal–Mart Stores, Inc. v. Frierson* (Miss.2002), 818 So.2d 1135, 1139–1140; *Brown v. Van Noy* (Mo.App.1994), 879 S.W.2d 667, 676; *Haselden v. Davis* (2003), 353 S.C. 481, 483, 579 S.E.2d 293; *Acuar v. Letourneau* (2000), 260 Va. 180, 192, 531 S.E.2d 316; *Koffman v. Leichtfuss* (2001), 246 Wis.2d 31, 45–46, 630 N.W.2d 201. See, e.g., *Bozeman v. Louisiana* (La.2004), 879 So.2d 692, 706.

---

{¶ e} "(C) A source of collateral benefits of which evidence is introduced pursuant to division (A) of this section shall not recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant."

{¶ 13} Other state courts have concluded that plaintiffs are entitled to recover only the amount actually paid by the plaintiffs' insurance. See *Moorhead v. Crozer Chester Med. Ctr.* (2001), 564 Pa. 156, 165, 765 A.2d 786 (in a medical malpractice action, the collateral-source rule does not apply to the amount written off by the tortfeasor because that amount was not paid by a collateral source); *Hanif v. Hous. Auth. of Yolo Cty.* (1988), 200 Cal.App.3d 635, 640, 246 Cal.Rptr. 192 (the reasonable value of a plaintiff's damages must be the actual amount paid for medical services or the amount for which the plaintiff incurred liability); *Dyet v. McKinley* (2003), 139 Idaho 526, 529, 81 P.3d 1236 (although a write-off technically is not a payment from a collateral source within the meaning of a statute prohibiting double recoveries from collateral sources, it is not an item of damages for which a plaintiff may recover because the plaintiff has incurred no liability for the charges); *Coop. Leasing v. Johnson* (Fla.App.2004), 872 So.2d 956, 960 (the amount written off by medical providers cannot be considered "benefits received" under the Florida statute). Of these states, Florida and Idaho have statutes that limit or abolish the collateral-source rule.

{¶ 14} Effective April 7, 2005, the General Assembly passed R.C. 2315.20, entitled "Introduction of evidence of collateral benefits in tort actions." Am.Sub. S.B. No. 80 (2005). This statute allows the defendant in any tort action to introduce "evidence of any amount *payable* as a benefit to the plaintiff as a result of the damages that result from an injury * * *." (Emphasis added.) This provision is subject to exceptions. In passing this statute, the General Assembly found that "[t]wenty-one states have modified or abolished the collateral source rule." Id., Section 3(A)(7)(b). The General Assembly also requested that we "reconsider [our] holding on the deductibility of collateral source benefits in *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415[, 633 N.E.2d 504]." Id., Section 3(E). In light of this legislative history, it is clear that the General Assembly intended to limit the collateral-source rule in Ohio, just as the statutes have in the Florida and Idaho cases.

{¶ 15} Bates urges us to hold that a plaintiff should recover only the amount of medical expenses actually paid, while Robinson contends that under the collateral-source rule, a plaintiff should have been permitted to introduce evidence of the original amount of billed medical expenses, regardless of what was actually paid. In deciding this issue, the court of appeals concluded that "the collateral-source rule applies to any written-off amount agreed to by a plaintiff's health-care provider and insurer." 160 Ohio App.3d 668, 2005-Ohio-1879, 828 N.E.2d 657, ¶ 83. We disagree.

{¶ 16} The collateral-source rule does not apply to write-offs of expenses that are never paid. The written-off amount of a medical bill differs from the receipt of compensation or services addressed in *Pryor*. The collateral-source rule

excludes only " 'evidence of benefits *paid* by a collateral source.' " (Emphasis added.) *Wentling v. Med. Anesthesia Servs., P.A.* (1985), 237 Kan. 503, 515, 701 P.2d 939, quoting 3 Minzer, Nates, Kimball, Axelrod & Goldstein, Damages in Tort Actions (1984) 17–5, Section 17.00. Because no one pays the write-off, it cannot possibly constitute *payment* of any benefit from a collateral source. See *Moorhead v. Crozer Chester Med. Ctr.*, 564 Pa. 156, 765 A.2d 786 (collateral-source rule does not apply to amounts written off by the insurer since those amounts are *never* paid by any collateral source). Because no one pays the negotiated reduction, admitting evidence of write-offs does not violate the purpose behind the collateral-source rule. The tortfeasor does not obtain a credit because of payments made by a third party on behalf of the plaintiff.

{¶ 17} To avoid the creation of separate categories of plaintiffs based on individual insurance coverage, we decline to adopt a categorical rule. Because different insurance arrangements exist, the fairest approach is to make the defendant liable for the reasonable value of plaintiff's medical treatment. Due to the realities of today's insurance and reimbursement system, in any given case, that determination is not necessarily the amount of the original bill or the amount paid. Instead, the reasonable value of medical services is a matter for the jury to determine from all relevant evidence. Both the original medical bill rendered and the amount accepted as full payment are admissible to prove the reasonableness and necessity of charges rendered for medical and hospital care.

{¶ 18} The jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between. Any difference between the original amount of a medical bill and the amount accepted as the bill's full payment is not a "benefit" under the collateral-source rule because it is not a payment, but both the original bill and the amount accepted are evidence relevant to the reasonable value of medical expenses.

{¶ 19} It may well be that the collateral-source rule itself is out of sync with today's economic realities of managed care and insurance reimbursement for medical expenses. However, whether plaintiffs should be allowed to seek recovery for medical expenses as they are originally billed or only for the amount negotiated and paid by insurance is for the General Assembly to determine.

## Landlord Liability

{¶ 20} The court of appeals found also that the directed verdict in favor of the landlord was improper because the "open and obvious" doctrine does not abrogate a landlord's statutory duty to keep leased premises in a fit and habitable condition. The trial court granted the motion for a directed verdict after it had viewed all the evidence and found that reasonable minds could only conclude that Robinson had failed to establish a negligence claim.

{¶ 21} To prevail in a negligence action, the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus. The "open and obvious" doctrine is still viable in Ohio, as we held in *Armstrong* in analyzing the doctrine, which is based on a common-law duty to warn invitees of latent or hidden dangers. Id. at ¶ 11. In this case, however, there is a statutory duty—the landlord's duty to repair.

{¶ 22} R.C. 5321.04(A)(2) provides that a landlord who is a party to a rental agreement shall "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition."

{¶ 23} We have held that a landlord's violation of the duties imposed by R.C. 5321.04(A)(1) or 5321.04(A)(2) constitutes negligence per se. *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 727 N.E.2d 1277. But "[n]egligence *per se,* however, is not equivalent to 'a finding of liability *per se* because the plaintiff will also have to prove proximate cause and damages.'" Id. at 496, 727 N.E.2d 1277, quoting *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198. Negligence per se is also different from strict liability, in that a negligence-per-se violation will not preclude defenses and excuses, unless the statute clearly contemplates such a result. Id. at 497, 727 N.E.2d 1277. Most statutes are construed to require that the actor take reasonable diligence and care to comply, and if after such diligence and care the actor is unable to comply, the violation will ordinarily be excused. Restatement of the Law 2d, Torts (1965) 38, Section 288A, Comment g.

{¶ 24} Even though Bates as a landlord had a statutory duty to repair, the record shows that the state of the repairs was a jury question. Bates's grandson, Walter Rice, testified that he ordered the repair of the driveway retaining wall and that the wall was torn down to be repaired. Rice also stated that the debris in the driveway area consisted of stones that were going to be used to rebuild the wall. Clifford Harkness, Robinson's fiancé, testified that the wall was in the process of being repaired when Robinson was injured. Robinson herself testified that the concrete footer was not exposed until the retaining wall was torn down. She also testified that the contractors had left debris in the driveway and then never returned to complete the work. Robinson injured her foot on the concrete footer three to five days after the wall was torn down. From the testimony, it is clear that a jury should have been allowed to consider whether Bates exercised reasonable diligence and care in repairing the wall or instead breached her statutory duty to repair. A determination that Bates breached that statutory

duty would have constituted negligence per se. The jury would then have been required to find whether Robinson proved that the breach was the proximate cause of her injury and the amount of any damages. *Chambers v. St. Mary's School*, 82 Ohio St.3d at 565, 697 N.E.2d 198.

{¶ 25} The "open and obvious" doctrine does not dissolve the statutory duty to repair. *Schoefield v. Beulah Rd.* (Aug. 26, 1999), Franklin App. No. 98AP–1475, 1999 WL 645273. If the jury finds that Bates breached her duty to repair and keep the leased premises in a fit and habitable condition, the "open and obvious" doctrine will not protect her from liability. If the jury finds no statutory breach, however, it still must determine whether the danger was open and obvious to Robinson under common-law negligence principles. Therefore, we agree with the court of appeals that because questions of fact exist as to the state of the repairs of the leased premises, a directed verdict should not have been granted.

## Conclusion

{¶ 26} The jury should have been permitted to examine both the original medical bill and the amount accepted as full payment to determine the reasonableness and necessity of charges rendered for Robinson's medical and hospital care, for the collateral-source rule does not bar evidence of write-offs. Furthermore, since factual questions existed as to the breach of the duty owed by Bates to Robinson, under R.C. 5321.05(A)(2), a directed verdict was improper.

{¶ 27} The judgment of the Court of Appeals of Hamilton County is affirmed, and the case is remanded to the trial court.

*Judgment accordingly.*

MOYER, C.J., RESNICK, PFEIFER and O'CONNOR, JJ., concur.

O'DONNELL, J., concurs in judgment only.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 28} While I agree generally with the majority's opinion that both the amount billed and the amount paid are *admissible,* I would limit *recovery* for medical expenses to the amount actually paid for treatment.

{¶ 29} As the majority discussed, in this day and age of managed care and discounting of medical bills by insurers, the amount reimbursed often has little relation to the actual cost of the services. However, the actual amount billed is more reflective of the actual value of the services rendered, which juries often use as a benchmark in deciding the seriousness of the injuries. For example, a plaintiff incurs a medical bill for $10,000 for medical care after a car accident.

The $10,000 bill is settled for $2,000. However, claiming the plaintiff incurred only $2,000 in treatment distorts the degree of medical care and physical damages actually incurred by the plaintiff and could diminish the seriousness of the plaintiff's injuries.

{¶ 30} However, I would limit the actual *recovery* as a damage award to the amount that was actually paid or to that for which the plaintiff still remains liable. In the example cited above, the plaintiff's actual bill was reduced to $2,000, and the plaintiff owed no more. To allow *recovery* for $10,000 would grant the plaintiff *recovery* for medical bills for which the plaintiff is no longer responsible and would result in a windfall. But to limit *admissibility* to the $2,000 would distort the extent of injury suffered by the plaintiff. I believe that a jury instruction could advise the jury that the original amount can be considered in evaluating pain and suffering and the extent of the injuries, past and future, but that recovery for that part of the damage award representing medical expenses is limited to the actual amount ultimately paid by the plaintiff, whether through insurance benefits or otherwise.

{¶ 31} The majority's decision creates confusion by creating a grey area for judges instructing juries in considering medical damages. The majority holds the defendant liable for the "reasonable value of plaintiff's medical treatment" but gives no direction as to what that means—how does the jury weigh the amount billed, the amount paid, or "some amount in between"? What are the factors they may use to consider this issue? Then the majority further confuses the matter by saying that the General Assembly should resolve this issue, which it just decided was a jury question.

{¶ 32} I do not view this as a collateral-source issue. If a plaintiff's medical bill was settled for less, the plaintiff should be entitled to present to the jury the full bill and all its reasonable inferences as to damages, but recover only the amount actually paid as the amount necessary to make the plaintiff whole on medical expenditures.

{¶ 33} Therefore, I respectfully dissent as to this portion of the holding.

---

Ulmer & Berne, L.L.P., Marvin L. Karp, and David L. Lester, for appellant.

Scott A. Best, for appellee.

Bricker & Eckler, L.L.P., Catherine M. Ballard, and Anne Marie Sferra, urging reversal for amici curiae Ohio Hospital Association, Ohio State Medical Association, and Ohio Osteopathic Association.

Thompson Hine, L.L.P., and Alan F. Berliner, urging reversal for amici curiae Property Casualty Insurers Association of America and Ohio Insurance Institute.

Weston Hurd, L.L.P., Daniel A. Richards, and Ronald Rispo, urging reversal for amici curiae Ohio Association of Civil Trial Attorneys.