

ATTORNEYS FOR APPELLANT

Robert F. Ahlgrim, Jr.
State Farm Litigation Counsel
Indianapolis, Indiana

Karl L. Mulvaney
Jessica Whelan
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEY FOR *AMICUS CURIAE*
INDIANA TRIAL LAWYERS
ASSOCIATION

Joseph N. Williams
Price Waicukauski & Riley, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Daniel G. Foote
Tabor Law Firm, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mary K. Patchett, | November 19, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 29A04-1501-CT-1 |
| v. | Appeal from the Hamilton Superior Court |
| Ashley N. Lee, | The Honorable Steven R. Nation, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 29D01-1305-CT-4116 |

**Brown, Judge.**

[1] In this interlocutory appeal, Mary K. Patchett appeals the trial court's order granting a motion in limine filed by Ashley N. Lee, and ordering that evidence of payments made by the Healthy Indiana Plan ("HIP") to reimburse Lee's medical providers in full satisfaction of Lee's hospital bills, was barred by the collateral source statute, Ind. Code § 34-44-1-2, and is not admissible under Indiana caselaw. Patchett raises one issue, which we revise and restate as whether the court abused its discretion in ruling that such evidence was inadmissible. We affirm.[1]

### Facts and Procedural History

[2] On July 5, 2012, Lee was operating her motor vehicle in Noblesville, Indiana, when Patchett negligently operated her vehicle into the opposing lane and crashed into Lee. Lee sustained "disfiguring and permanent injuries, including, but not limited to, multiple orthopedic injuries, fractures, including a fracture of the right calcaneus, and contusions." Appellant's Appendix at 18. Lee was billed a total of $87,706.36 for the treatment of her injuries by medical providers. At the time of the accident, Lee was a member of HIP, which was a "program sponsored by the state of Indiana that provided a more affordable healthcare choice to thousands of otherwise uninsured individuals throughout Indiana" in which "[p]articipants are required to make monthly contributions

---

[1] On October 13, 2015, we held oral argument in Indianapolis. We thank counsel for their well-prepared advocacy.

toward coverage." *Id.* at 55. HIP paid Lee's medical providers a total of $12,051.48 in full satisfaction of her medical bills.

[3] On May 2, 2013, Lee filed a complaint for damages against Patchett, Patchett admitted negligence and conceded that most of the medical services provided to Lee were necessary, and the court scheduled the matter for a jury trial on damages. On September 11, 2014, Lee filed a motion in limine regarding the HIP payments, seeking to prevent Patchett from "eliciting testimony concerning or introducing evidence regarding" those payments. *Id.* at 40. Patchett filed her objection to the motion on September 22, 2014, and the court held a pretrial conference on September 24, 2014, and addressed Lee's motion.

[4] On October 16, 2014, the court issued the order from which this appeal arises and which made findings consistent with the foregoing, stating in relevant part:

> 4. That the legal issues to be determined by the Court concerning the Motion in Limine are: 1) does the Collateral Source Rule apply; and 2) if the Rule applies, is the amount reimbursed by HIP admissible under the holding of *Stanley*[*v. Walker*, 906 N.E.2d 852 (Ind. 2009), *reh'g denied*].

> 5. [] established at common law, the Collateral Source Rule prohibited defendants from introducing evidence of compensation received by Plaintiffs from collateral sources.

> 6. [] Justice Sullivan found the common law Collateral Source Rule was abrogated by enacting the Collateral Source Statute, Ind. Code § 34-44-1-2. *Shirley v. Russell*, 663 N.E.2d 532, 534 (Ind. 1996)[.] This precedent was followed in *Stanley*. Justice Dickson, although concurring in the result in *Shirley*, vehemently

dissented in *Stanely* [sic] finding that the legislature did not intend to abrogate the Common Law Rule concerning collateral source. *Stanley v. Walker* at 862. Justice Dickson found that the statute only created a "limited exception to the common law rule, which is otherwise left intact." *Id.* Unless revisited by the Indiana Supreme Court, this Court must follow the majority opinions of both cases that found that the common law rule was abrogated. Therefore, this Court will determine the above stated legal issues based on a statutory analysis and not on a common law analysis.

7. [] [I]n review of the first legal issue concerning whether the Collateral Source Statute should apply, the Court must first look to the clear language of the Statute. The Supreme Court found concerning the issue in *Stanley*, ". . . evidence of collateral source payments may not be prohibited except for specified exceptions." *Id.* at 855. One of the specified exceptions is the Statute does not allow evidence of collateral source payments made by:

> Any agency, instrumentality, or subdivision of the state or the United States; that have been made before trial to a Plaintiff as compensation for the loss or injury for which the action is brought . . .

Ind. Code §34-44-1-2(1)(c)(ii). There was nothing in the pleadings or in the arguments that contended that this exception does not apply to our factual situation in this case. Therefore, the Statute applies and the reimbursements made by HIP are excluded and are not to be presented to the jury.

\* \* \* \* \*

13. [] [T]here was nothing in the pleadings or in the arguments which contended that the payments made under HIP are based on the "reasonable value" of the medical services but that such

payments are based upon political and budget concerns as set forth in the statutes.

14. [] *Stanley* was based upon the underlying principle that the focus of the jury is to determine the "reasonable value" of the medical services that were provided. Based upon this principle, the Supreme Court found that the jury should be allowed to see the full amount billed and the amount paid after a negotiated discount by the insurance.

15. [] [T]his Court cannot find that the Supreme Court ever intended *Stanley* to be interpreted to include situations presented by this case where the reimbursement rate has no relation to the "reasonable value" of the services provided. This Court finds [the] reimbursed rate would provide no value and/or guidance to the jury in the determination of the "reasonable value" of the medical service provided.

16. The Court further finds, under Ind. Rules of Evidence 403, that the introduction of such evidence would only cause confusion to the jury on how such amounts should be used or considered.

17. The Court finds that reimbursements made by HIP are subject to the Collateral Source Statue [sic] and are not permitted by *Stanley*. Therefore, such evidence should not be presented to the Jury, and the Motion in Limine should be and is hereby GRANTED.

*Id.* at 10, 13-14.

On November 14, 2014, Patchett filed a Motion for Reconsideration or Alternative Request for Certification of Order in Limine for Interlocutory

Appeal, and on December 5, 2014, the court issued an order certifying its October 15 Order for interlocutory appeal. On January 30, 2015, this court granted Patchett's request to accept jurisdiction under Ind. Appellate Rule 14(B)(1).

## *Discussion*

[6] The issue is whether the trial court abused its discretion in ruling that evidence of the amount HIP paid to reimburse Lee's medical providers was inadmissible under the collateral source statute and caselaw. Evidentiary rulings such as in this case lie within the discretion of the trial court, and we may reverse such decisions only if a trial court abuses its discretion. *State Auto. Ins. Co. v. DMY Realty Co., LLP*, 977 N.E.2d 411, 422 (Ind. Ct. App. 2012). "A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law." *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 383 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*, *cert. denied*, 134 S. Ct. 952 (2014).

[7] The parties agree that both the collateral source statute and the Indiana Supreme Court's 2009 decision in *Stanley v. Walker*, 906 N.E.2d 852 (Ind. 2009) largely govern the outcome of this case. Accordingly, we begin by discussing them.

[8] The collateral source statute, codified at Ind. Code § 34-44-1-2, provides:

> In a personal injury or wrongful death action, the court shall
> allow the admission into evidence of:

(1) proof of collateral source payments other than:

(A) payments of life insurance or other death benefits;

(B) insurance benefits that[2] the plaintiff or members of the plaintiff's family have paid for directly; or

(C) payments made by:

(i) the state or the United States; or

(ii) any agency, instrumentality, or subdivision of the state or the United States;

that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought;

(2) proof of the amount of money that the plaintiff is required to repay, including worker's compensation benefits, as a result of the collateral benefits received; and

(3) proof of the cost to the plaintiff or to members of the plaintiff's family of collateral benefits received by the plaintiff or the plaintiff's family.

---

[2] The version of the collateral source statute in *Stanley* contained wording which was slightly different, in which the words "for which" were substituted for the word "that" appearing in the current version. I.C. § 34-44-1-2 (subsequently amended by Pub. L. No. 1-2010, § 139 (eff. March 12, 2010)).

In *Stanley*, Danny Walker sustained injuries in an automobile accident when he collided with a vehicle operated by Brandon Stanley, in which Stanley was at fault for the accident. 906 N.E.2d at 853-854. Walker's medical providers billed him a total of $11,570, but his health insurer negotiated a discount with his providers totaling $4,750, and the medical providers accepted payment from the insurer of $6,820 in satisfaction of Walker's medical bills. *Id.* at 854. Walker filed a complaint against Stanley for his injuries, Stanley admitted negligence for the accident, and the case proceeded on the issue of damages. *Id.* at 853-854. At trial, Walker introduced his bills showing the amounts medical service providers originally billed him totaling $11,570, and, at the close of Walker's testimony, Stanley sought to admit Walker's discounted medical bills and made an offer of proof. *Id.* at 854. Walker objected on grounds that evidence of the discounted bills violated the collateral source statute, and the trial court sustained the objection, ruling that the discounts constituted insurance benefits paid for by Walker and "insurance and 'anything flowing from the insurance benefit purchased by the plaintiff . . . .' would thus be prohibited under the collateral source statute." *Id.* (footnote omitted). The jury returned a $70,000 general verdict in favor of Walker. *Id.*

The Court first considered the collateral source statute "and its common law predecessor, the 'collateral source' rule." *Id.* It observed that:

> At common law, the collateral source rule prohibited defendants from introducing evidence of compensation received by plaintiffs from collateral sources, that is, sources other than the defendant, to reduce damage awards. This rule held tortfeasors accountable

for the full extent of the consequences of their conduct, "regardless of any aid or compensation acquired by plaintiffs through first-party insurance, employment agreements, or gratuitous assistance."

*Id.* (quoting *Shirley v. Russell*, 663 N.E.2d 532, 534 (Ind. 1996) (quoting *Shirley v. Russell*, 69 F.3d 839, 842 (7th Cir. 1995))).  It noted that "[t]he Legislature abrogated the common law collateral source rule by enacting the collateral source statute," which allows for "evidence of collateral source payments . . . except for specified exceptions."  *Id.* at 855.  The Court stated that

> [t]he purpose of the collateral source statute is to determine the actual amount of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or wrongful death action.  I.C. § 34-44-1-1(1)-(2).  At the same time, it retains the common law principle that collateral source payments should not reduce a damage award if they resulted from the victim's own foresight—both insurance purchased by the victim and also government benefits— presumably because the victim has paid for those benefits through taxes.

*Id.*

[11]  With this in mind, the Court turned to the issue presented, observing that an injured plaintiff "is entitled to recover damages for medical expenses that were both necessary and reasonable" and that the question presented was "how to determine the reasonable value of medical services when an injured plaintiff's medical treatment is paid from a collateral source at a discounted rate."  *Id.*

(citing *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 277 (Ind. 2003)). It identified three different approaches other jurisdictions have used to analyze whether to allow such evidence. Some states "apply the collateral source rule to negotiated discounts on the plaintiff's medical care for which the plaintiff paid consideration." *Id.* Two states have held that such medical discounts were a collateral source "but that they were compelled to set off the collateral source amount against an award of compensatory damages under their respective state statutes." *Id.* Finally, "[i]n another approach, the Ohio Supreme Court has allowed both the amount paid and the amount billed into evidence to prove the reasonable value of medical services." *Id.* at 855-856 (citing *Robinson v. Bates*, 857 N.E.2d 1195, 1200 (Ohio 2006) (holding that the jury may determine that the reasonable value of medical services is the amount originally billed, the amount accepted as payment, or some amount in between)).

[12]  The Court next turned to Ind. Evidence Rule 413, which provides one method for proving the reasonable value of medical expenses and states: "[s]tatements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable." *Id.* at 856 (quoting Evid.R 413). The Court then discussed its previous statements in *Cook* and observed that although "medical bills can be introduced to prove the amount of medical expenses when there is no substantial issue that the medical expenses are reasonable. . . . in cases where the reasonable value of medical services is disputed, the method outlined in

Rule 413 is not the end of the story." *Id.* (citing *Cook*, 796 N.E.2d at 277-278). After examining statements from prior cases, the Court declared:

> In sum, the proper measure of medical expenses in Indiana is the reasonable value of such expenses. This measure of damages cannot be read as permitting only full recovery of medical expenses billed to a plaintiff. Nor can the proper measure of medical expenses be read as permitting only the recovery of the amount actually paid. The focus is on the reasonable value, not the actual charge. This is especially true given the current state of health care pricing.

*Id.* at 856-857 (internal citations omitted).

[13]     The Court also discussed the policy issues involved, in which "[t]he complexities of health care pricing structures make it difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services." *Id.* at 857. Citing to a law review article, the Court observed that although "hospitals historically billed insured and uninsured patients similarly," after "the advent of managed care, some insurers began demanding deep discounts, and hospitals shifted costs to less influential patients." *Id.* (citing Mark A. Hall & Carl E. Schneider, *Patients As Consumers: Courts, Contracts, and the New Medical Marketplace*, 106 MICH. L. REV. 643, 663 (2008)). The Court further observed that "insurers generally pay about forty cents per dollar of billed charges and that hospitals accept such amounts in full satisfaction of the billed charges." *Id.* (citing Hall & Schneider, *supra*, at 663). Citing to another authority, the Court also noted that "the relationship between charges and costs is 'tenuous at best,'" and accordingly,

"based on the realities of health care finance, we are unconvinced that the reasonable value of medical services is necessarily represented by either the amount actually paid or the amount stated in the original medical bill." *Id.*

[14]  Following its policy discussion, the Court returned to the question of how to determine the reasonable value of medical services at a damages hearing in a personal injury lawsuit, and it adopted the Ohio "hybrid" approach, specifically the declaration from the Ohio Supreme Court that, "[t]he jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between . . . ." *Id.* (quoting *Robinson*, 857 N.E.2d at 1200-1201). According to the Ohio court, "[b]ecause no one pays the negotiated reduction, admitting evidence of [discounts] does not violate the purpose behind the collateral-source rule," and accordingly "both values were relevant evidence that should be submitted to a jury to determine the reasonable value of medical services." *Id.* (quoting *Robinson* 857 N.E.2d at 1200). The Court, while recognizing "that the discount of a particular provider generally arises out of a contractual relationship with health insurers or government agencies and reflects a number of factors—not just the reasonable value of the medical services," held that nevertheless "this evidence is of value in the fact-finding process leading to the determination of the reasonable value of medical services," that "[t]he collateral source statute does not bar evidence of discounted amounts in order to determine the reasonable value of medical services," and that "[t]o the extent the adjustments

or accepted charges for medical services may be introduced into evidence without referencing insurance, they are allowed." *Id.* at 858.

[15] Justice Dickson authored a dissent in *Stanley* which began by stating that "this new rule contravenes the express requirements of the collateral source statute . . . and is also unfair and undesirable judicial policy." *Id.* at 860.[3] He wrote that the collateral source statute "explicitly declines to extend" admissibility of collateral source payments which are "in the form of 'insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly,'" that that the majority's rule "seems diametrically opposed to the statute's clear and unequivocal language," and that "[s]tatutory modification or nullification is best left to the General Assembly." *Id.* at 861. He also disagreed with the majority's conclusion that the collateral source statute abrogated the common law collateral source rule and stated that "the statute's precise language appears to create a limited exception to the common law rule, which is otherwise left intact," and accordingly the statute should be strictly construed. *Id.* at 862. Justice Dickson also expressed his opposition to the rule "because it is incomplete, misleading, and unfair, and will add layers of complexity, time, and expense to personal injury litigation, impairing the efficient administration of justice." *Id.* at 862-863.

---

[3] Justice Dickson's dissent in *Stanley* was joined by Justice Rucker. 906 N.E.2d at 860. The majority consisted of Justices Sullivan, Boehm, and Chief Justice Shepard. *Id.* at 853, 859.

[16]    Turning to the parties' arguments, Patchett's position is that "although *Stanley* involved contractual discounts imposed by a private insurer, its reasoning and its language apply with equal force to all types of discounted payments which fully satisfy a medical provider's charges, including discounted payments from a state or other governmental authority," and "[i]t is not the source of the discount which determines the admissibility or relevancy of this evidence, but the fact that the medical provider was willing to accept the discounted payment in full satisfaction of its charges." Appellant's Brief at 8. Patchett points out that *Stanley* specifically stated "that the discount of a particular provider generally arises out of a contractual relationship with health insurers **or government agencies, and reflects a number of factors**—not just the reasonable value of the medical services." *Id.* (quoting *Stanley*, 906 N.E.2d at 858). She asserts that the trial court's conclusion that "a governmental reimbursement rate was not relevant to determining the reasonable value of a provider's services. . . . is flatly inconsistent with *Stanley's* language, and its rationale." *Id.* She contends that the Indiana Supreme Court indicated that *Stanley* should be interpreted "so as to make all discounted payments admissible, irrespective of their source," as in the case of *Butler v. Ind. Dep't of Ins.*, 904 N.E.2d 198 (Ind. 2009). *Id.* at 9.

[17]    Lee begins her argument by noting that "it is undisputed that for well over a century . . . the measure of damages for medical services in a common law tort action is the 'reasonable value' of those services." Appellee's Brief at 8. She argues that "[t]he instant case is distinguished from *Stanley* in that HIP is not a

private, individual, or group health insurance plan, and [] there is no evidence that Lee's medical providers accepted payments that were 'discounted' or that resulted from negotiation as contemplated by *Stanley*." *Id.* at 9. She states that HIP "was a publicly-funded plan that paid providers based on Medicare and Medicaid rates" as established by an act of the General Assembly. *Id.* (citing Ind. Code § 12-15-44.2-14(a)). She points out that payments under HIP are not negotiated and rather are "dictated by the State of Indiana, based on federal Medicare reimbursement guidelines," which are "established under Congressional authority." *Id.* at 10.

[18] Lee's brief discusses Medicare, observing that although when it "was instituted, it paid providers based on their 'usual and customary' charges, so long as the charges were 'reasonable,'" due to "escalating Medicare expenditures, Congress in 1983 revised Medicare's reimbursement scheme," in which "Medicare no longer pays based on 'usual and customary' charges, and importantly, no longer applies a 'reasonableness' standard." *Id.* She notes that "[p]roviders now receive notice of the reimbursement rates, regardless of costs actually incurred," and that the "payment schedule is based on various factors, one of which is 'budget neutrality.'" *Id.* She asserts that, accordingly, such payments do not constitute "evidence of the 'reasonable value' of medical care." *Id.* at 10-11. Lee also argues that *Stanley's* reference to payments made by "government agencies" should be interpreted as being limited to "arms-length negotiation[s] between a private or governmental *insurer* and a health care provider," noting that "Federal, State and local government entities routinely provide self-funded

or insurance coverage to their employees and beneficiaries." *Id.* at 11. She notes that Patchett's argument to interpret *Stanley's* reference to government agencies "overlooks the fact that" the rule "applies only where there is evidence of 1) a 'contractual relationship' . . . 2) negotiation, and 3) a 'discounted' payment." *Id.*

[19] Lee also argues that Patchett's reliance on *Butler* is misplaced because that case concerned a wrongful death action and thus "was decided not in a common law dispute, such as the instant case, but instead in the framework of two statutory schemes – the Indiana Medical Malpractice Act and the Indiana Adult Wrongful Death Act," for which damage calculation is different and is concerned with the "estate's 'reasonable *expenses*.'" *Id.* at 12-14. She argues that the trial court correctly ruled that "*Stanley* stands for the proposition that evidence of *negotiated discounts* between providers and insurers may be helpful in determining the 'reasonable value' of medical services." *Id.* at 15. Her position is that the court also acted within its discretion when it ruled, independently, that evidence of the HIP payments be excluded under Ind. Evidence Rule 403 because such evidence would confuse the jury as to how the amounts should be considered.

[20] The Indiana Trial Lawyers Association ("ITLA") filed an amicus brief arguing that Medicaid reimbursement rates used by HIP are not relevant to the issue of "reasonable value" because they are not negotiated "and medical providers are **required by law** to accept them as payment in full," and "it is well recognized that government programs reimburse at rates **below marginal cost**." Amicus

Brief at 3-4. ITLA acknowledges that "[i]f a provider does not like the Medicaid reimbursement rate, then she can choose not to see Medicaid patients; but she cannot negotiate a higher reimbursement rate." *Id.* at 5. It states that this fact distinguishes *Stanley*, which involved "sophisticated parties (a healthcare provider and a commercial insurance plan)" who participated in an "arms' length negotiation" to settle on the final reimbursement rate, noting that the holding in that case "was nothing more than a reaffirmation of the basic economic principle that fair (or reasonable) value can be found at the price a buyer is willing to pay and a seller willing to accept when neither is under any compulsion to consummate the transaction." *Id.* ITLA argues that government insurance reimbursement rates are understood to be below cost and that they are "often so much below cost that healthcare providers attempt to make up the shortfall through increased receipts from other payers." *Id.* at 6. ITLA finally asserts that "[a]llowing the admission of government reimbursement rates will change our tort system into one that necessarily values the suffering and injuries to those served by Medicaid and Medicare—our needy, disabled, and elderly—less than those who can afford private insurance." *Id.* at 10.

### *Decision*

[21] We first turn to the text of the collateral source statute. As noted, the trial court found that the HIP payments are inadmissible under Ind. Code § 34-44-1-2(1)(C), which precludes the admission into evidence of "payments made by: . . . (ii) any agency, instrumentality, or subdivision of the state or the United States; that have been made before trial to a plaintiff as compensation for the

loss or injury for which the action is brought." The trial court observed that neither the pleadings nor the arguments contended that this exception does not apply, and moreover, Patchett does not directly challenge its application on appeal. Indeed, the lone reference Patchett makes to this subparagraph is in her reply brief where she states that "[a]s *Stanley* permits the defendant to challenge the reasonableness of the plaintiff's medical charges by showing that those bills were fully satisfied by a discounted payment, it necessarily resolves Lee's related arguments that the trial court had discretion to exclude this evidence" under Ind. Code § 34-44-1-2(1)(C)(ii). Appellant's Reply Brief at 10-11. Thus, Patchett does not challenge the applicability of Ind. Code § 34-44-1-2(1)(C)(ii) but instead suggests that *Stanley* is equally applicable to that subparagraph.

[22] Also, the parties do not dispute that Lee was a member of HIP, which functioned as her health insurer, and that she made monthly contributions towards coverage. *See also* Ind. Code § 12-15-44.2-11 (Supp. 2011) (governing an enrollee's payment amounts, which started at $160 per year). Ind. Code § 34-44-1-2(1)(B) provides that evidence of "insurance benefits that the plaintiff or members of the plaintiff's family have paid for directly" are inadmissible under the collateral source statute.

[23] Regardless of whether Subparagraph (B) or (C) is the relevant provision of the collateral source statute applicable here matters not, however, because we find that the rule in *Stanley* does not apply to these facts. Again, *Stanley* essentially ruled that "[g]iven the current state of the health care pricing system" in which "a medical provider's billed charges do not equate to cost," evidence of

"discounted amounts" may be introduced in order to assist in determining the reasonable value of medical services so long as no reference to insurance is made in admitting those discounted amounts, and that such evidence does not violate the collateral source statute. 906 N.E.2d at 858. Accordingly, to the extent that Ind. Code § 34-44-1-2(1)(B) provides that evidence of "insurance benefits that the plaintiff or members of the plaintiff's family have paid for directly" are inadmissible, merely admitting the discounted amount does not violate the statute. *Id.*

[24] The policy underlying the rule in *Stanley* breaks down, though, when the amounts actually paid are not the result of arms-length negotiation. The trial court made this observation in its order, noting that here, the reimbursement rate provides no guidance to the jury in determining "the 'reasonable value' of the medical service provided." Appellant's Appendix at 13. Counsel for ITLA at oral argument articulated the assumption in *Stanley* that the "discounted amounts" are a result of negotiation as follows:

> . . . it is a required premise for the conclusion that they reached. For any evidence to be admissible, it has to be probative. It has to make, or have the tendency to make, some issue of fact more or less probable. There is a basic economic principle that the amount of money that a buyer is willing to pay and that a seller is willing to accept in an open market demonstrates a fair or reasonable value. You see that throughout cases in Indiana in all sorts of subjects. The only way that a discounted payment is probative – has some tendency to make the concept of reasonable value apparent to the jury, is if it is negotiated. If it is a willing buyer and a willing seller meeting in the middle, which

demonstrates fair and reasonable value. . . . It is a required premise.

Oral Arg. at 32:45- 33:38, *available at* https://mycourts.in.gov/arguments/ default.aspx?&id=1852&view=detail&yr=&when=&page=1&court=app&searc h=&direction=%20ASC&future=False&sort=&judge=&county=&admin=Fals e&pageSize=20.

[25] After considering the relevant language in *Stanley*, we arrive at the same conclusion as the trial court. The *Stanley* Court began its discussion of whether to admit collateral source evidence by identifying different approaches jurisdictions have used, and at the outset observed that some states "apply the collateral source rule to *negotiated* discounts on the plaintiff's medical care for which the plaintiff paid consideration" and that "[t]wo state courts have held that *the medical discounts* were a collateral source, but that they were compelled to set off the collateral source amount . . . under their respective state statutes." 906 N.E.2d at 855 (emphases added). The emphasized language demonstrates that, indeed, the rule in *Stanley* is premised on the principle that the discounted amounts must be the product of negotiation. Further, the Court later quoted from *Robinson*, which discussed the "hybrid" approach adopted by the Court and similarly contemplated negotiated discounts where it stated that "[b]ecause no one pays the *negotiated* reduction, admitting evidence of [discounts] does not violate the purpose behind the collateral-source rule." *Id.* at 857 (quoting *Robinson* 857 N.E.2d at 1200) (emphasis added). The Court stated that, based

thereon, "both values were relevant evidence that should be submitted to a jury to determine the reasonable value of medical services." *Id.*

[26] There are other statements in *Stanley* that support this conclusion. The policy discussion focused on private insurers that "began demanding deep discounts," noting that "insurers generally pay about forty cents per dollar of billed charges and that hospitals accept such amounts in full satisfaction of the billed charges." *Id.* The HIP payments, by contrast, constituted 13.7 percent of the original amount billed to Lee for her medical treatment. Justice Boehm in his concurrence wrote that he believed the discounted amounts are relevant "because they reflect the amounts that the providers are *willing to accept* for their services." *Id.* at 859 (emphasis added). We further find that even the description of the lower amount as "discounted amounts" contemplates arms-length negotiations. We therefore determine that the rule of *Stanley* applies only to lower paid amounts when those amounts are the result of negotiated discounts and therefore are probative of a medical service's reasonable value.

[27] Lee and ITLA both cite to authority in their briefs for the proposition that the HIP payments are premised on political decisions and are not the product of arms-length negotiations – an argument that Patchett does not directly challenge in her briefs. For instance, ITLA notes that "[w]hen a provider treats a Medicaid patient, that provider *must* accept as payment in full the reimbursement amount set by regulation." Amicus Brief at 4 (citing 42 C.F.R. § 447.15). The Appellant's Appendix contains documentation from the "Healthy Indiana Plan Reimbursement Manual," which states that "[p]roviders

bill claims for the HIP program on the Centers for *Medicare & Medicaid Services (CMS) 1450 form (UB-04)*," and "[u]se the Medicare Inpatient Prospective Payment System (IPPS) to calculate payment based on diagnosis-related groups (DRGs)." Appellant's Appendix at 57; *see also* Ind. Code § 12-15-44.2-14 (Supp. 2011), *and* 405 Ind. Admin. Code 9-2-23 (2012) (setting the reimbursement rate paid to providers); 405 Ind. Admin. Code 9-9-7 (2012) (governing the reimbursement process). ITLA further notes that "[t]here is a significant body of research suggesting that the reimbursement rates paid by government insurers such as Medicare and Medicaid are actually below fully allocated cost for most hospitals." Amicus Brief at 6 (quoting George A. Nation, III, *Determining the Fair and Reasonable Value of Medical Services: The Affordable Care Act, Government Insurers, Private Insurers and Uninsured Patients*, 65 BAYLOR L. REV. 425, 459 (2013)). The article discussed by ITLA further notes that "Why more hospitals don't simply refuse to accept government insured patients is an important and complex question" and that "such a refusal carries the risk of important negative consequences." Nation, III, *supra*, at 459. It states that refusal "in certain contexts is simply illegal" and that "very serious political consequences, which could include the loss of tax exempt status, could result if charitable hospitals attempted to stand up to government intimidation." *Id.* at 460.

[28] The Court in *Stanley* reaffirmed that a successful plaintiff in a personal injury suit is entitled to the reasonable value of that person's medical expenses, and it held that evidence of "discounted amounts" arrived at as the result of

negotiation between the provider and an insurer are probative in determining reasonable value and should be admitted. Here, because the HIP payments were not calculated based upon market negotiation but instead were set by government regulation, such amounts are not probative of the reasonable value of the medical expenses. Thus, we conclude that the trial court properly excluded the evidence of the HIP payment amounts.[4]

[29] To the extent that Patchett argues that *Butler v. Ind. Dep't of Ins.* demonstrated the Indiana Supreme Court's intent to make all discounted payments admissible regardless of source, we note that the Court in that case held that "under the statute governing actions for the wrongful death of unmarried persons with no dependents . . . the amount recoverable for reasonable medical and hospital expenses necessitated by the alleged wrongful conduct is the total amount ultimately accepted after such contractual adjustments, not the total of charges billed." 904 N.E.2d at 199. The plaintiff estate presented two issues on appeal: whether "recovery for reasonable and necessary medical expenses under the applicable wrongful death statute was erroneously limited to the amounts paid and should instead include the total amounts billed," and second, whether "the

---

[4] To the extent that Patchett suggests the Court in *Stanley* contemplated that amounts such as the HIP payments would be admissible where it references "both insurance purchased by the victim and also government benefits," 906 N.E.2d at 855, we disagree. That statement in *Stanley* specifically referenced that the collateral source statute "retains the common law principle that collateral source payments should not reduce a damage award if they resulted from the victim's own foresight—both insurance purchased by the victim and also government benefits . . . ." *Id.* Nothing in this statement contradicts our holding today that, absent arms-length negotiation, discounted amounts are not probative of reasonable value and are therefore not admissible.

trial court erred in admitting evidence of amounts paid by the decedent's private insurance coverage, Medicare, and Medicaid, contrary to the Indiana Collateral Source Statute." *Id.* at 201. Regarding the second issue, the Court found that issue "moot . . . in light of the parties' Partial Settlement Agreement declaring the parties' agreement on issues 'except for any claims for additional medical expenses that were not paid but were billed to the decedent and/or Estate,' . . . ." *Id.* The Court declared that "[t]he Estate's claim that the trial court incorrectly admitted evidence showing the amounts actually paid and accepted for the decedent's medical expenses is therefore irrelevant, and we address only the first contention in the Estate's appeal." *Id.* The Court included a footnote after this sentence observing that "[i]ssues related to the Collateral Source Statute are before this Court in *Stanley v. Walker*, 888 N.E.2d 222 (Ind. Ct. App. 2008), in which transfer has been granted." *Id.* at 201 n.6.

[30] The estate in *Butler* emphasized "the statutory language referring to 'reasonable' expenses and the open-ended phrase 'but are not limited to,'" and the Court observed caselaw holding "that in common law tort actions Indiana has long recognized that a plaintiff may recover the reasonable value of medical services, regardless of whether the plaintiff is personally liable for them or whether they were rendered gratuitously" and that "the extent of recovery by an injured plaintiff for medical expenses depends not upon what the plaintiff paid for such services but rather their reasonable value." *Id.* at 201-202. The Court proceeded to note that the facts in that case do "not present a common law claim but rather arise[] as a statutory cause of action that the common law did

not recognize" and that it must construe such statutory provisions narrowly, holding that under Indiana's Adult Wrongful Death Act,

> when medical providers provide statements of charges for health care services to the decedent but thereafter accept a reduced amount adjusted due to contractual arrangements with the insurers or government benefit providers, in full satisfaction [of] the charges, the amount recoverable under the statute for the "[r]easonable medical . . . expenses necessitated" by the wrongful act is the portion of the billed charges ultimately accepted pursuant to such contractual adjustments.

*Id.* at 202-203.

[31] We find the facts and reasoning in *Butler* to be distinguishable, and we do not believe that the Court's mere reference to the collateral source statute in a footnote and the pending *Stanley* decision has an impact on the outcome of this case.

[32] Finally, even if evidence of the HIP payment amounts are admissible under the collateral source statute and *Stanley*, such would not preclude the court, in its discretion, from excluding said amounts under Ind. Evidence Rule 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." "A trial court decision regarding whether any particular evidence violates Evidence Rule 403 will be accorded a great deal of deference on appeal; we review only for an abuse of discretion." *Tompkins v.*

*State*, 669 N.E.2d 394, 398 (Ind. 1996). Here, the court examined the dollar figure associated with the HIP payments and ruled that such amount "would only cause confusion to the jury on how such amounts should be used or considered." Appellant's Appendix at 14. To the extent Patchett suggests that the court abused its discretion because it misinterpreted the law in *Stanley*, we disagree. The court invoked Rule 403 in the alternative when it "further" found that evidence of the HIP payments would cause confusion, and we cannot say that the court abused its discretion in that regard. *Id.*

### Conclusion

[33] For the foregoing reasons, we affirm the trial court's order granting Lee's motion in limine.

[34] Affirmed.

Riley, J., and Altice, J., concur.