ATTORNEYS FOR APPELLANT
Karl Mulvaney
Jessica Whelan
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

Robert F. Ahlgrim, Jr.
State Farm Mutual Automobile
Insurance Company
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA HEALTH CARE ASSOCIATION
Lucy R. Dollens
Edward L. Holloran
Grant R. Krevda
Quarles & Brady LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF INDIANA
Jon M. Pinnick
Angela J. Della Rocco
Michael F. Mullen
Schultz & Pogue, LLP
Indianapolis, Indiana

Donald B. Kite, Sr.
Of Counsel
Wuertz Law Office, LLC
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
AMERICAN TORT REFORM ASSOCIATION
Bradley J. Buchheit
Tucker Hester Baker & Krebs, LLC
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA LEGAL FOUNDATION
Mary Nold Larimore
Jenny R. Buchheit
Derek R. Molter
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Daniel G. Foote
Tabor Law Firm, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYER ASSOCIATION
Joseph N. Williams
Riley Williams & Piatt, LLC
Indianapolis, Indiana



FILED
Oct 21 2016, 12:38 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 29S04-1610-CT-549

MARY K. PATCHETT,

*Appellant (Defendant Below),*

v.

ASHLEY N. LEE,

*Appellee (Plaintiff Below).*

Interlocutory Appeal from the Hamilton Superior Court 1, No. 29D01-1305-CT-004116
The Honorable Steven R. Nation, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A04-1501-CT-00001

**October 21, 2016**

**Slaughter, Justice.**

In Stanley v. Walker, 906 N.E.2d 852 (Ind. 2009), we interpreted Indiana's collateral-source statute to permit a defendant in a personal-injury suit to introduce discounted reimbursements negotiated between the plaintiff's medical providers and his private health insurer, so long as insurance is not referenced. Today, we hold the rationale of Stanley v. Walker applies equally to reimbursements by government payers. The animating principle in both cases is that the medical provider has agreed to accept the reduced reimbursement as full payment for services rendered. The reduced amount is thus a probative, relevant measure of the reasonable value of the plaintiff's medical care that the factfinder should consider.

**Factual and Procedural Background**

Mary Patchett admits she drove her car negligently into oncoming traffic in 2012, striking Ashley Lee's vehicle and causing Lee injuries that required medical treatment. Lee sued and sought damages that would "fully and fairly compensate her". Patchett admitted she was liable for the accident and generally agreed Lee received necessary medical treatment for her resulting injuries. But Patchett contested the reasonable value of Lee's medical care, so the parties prepared for a trial on damages.

The parties agreed that Indiana Evidence Rule 413 allowed Lee to introduce her accident-related medical bills totaling $87,706.36 as evidence those charges were reasonable. The parties disagreed, however, whether Patchett could introduce evidence that Lee's providers accepted a reduced amount as payment in full. Specifically, because Lee was enrolled in the Healthy Indiana Plan (HIP), a government-sponsored healthcare program, her providers, as HIP participants, accepted HIP's prevailing reimbursement rates of $12,051.48 in full satisfaction of those charges—an 86-percent discount from the amounts billed.

Lee moved before trial to prevent the jury from hearing the reduced HIP rates. Patchett objected, but the trial court granted Lee's motion. In addition to finding that the HIP payments are subject to the collateral-source statute and not permitted by Stanley, the court excluded the HIP amounts under Evidence Rule 403, because it found HIP's reduced rates would only confuse the jury. The court certified its order for interlocutory appeal, observing that "whether [Patchett] may prove the reasonable value of [Lee's] medical expenses by introducing evidence of the discounted payments made to her medical providers through HIP is of critical importance to the jury's determination of damages."

The Court of Appeals accepted jurisdiction and affirmed. Patchett v. Lee, 46 N.E.3d 476 (Ind. Ct. App. 2015). The court concluded Stanley was limited to "evidence of 'discounted amounts' arrived at as the result of negotiation between the provider and an insurer". Id. at 487. Because the reduced HIP amounts "were not calculated based upon market negotiation", the court held they are "not probative of reasonable value" and were properly excluded. Id. Patchett then sought transfer, arguing the courts below erred in finding Stanley v. Walker inapplicable to HIP discounts. We grant transfer, thus vacating the Court of Appeals opinion, and reverse.

3

**Standard of Review**

We generally review a trial court's decision to admit or exclude evidence for an abuse of discretion. State Farm Mut. Auto Ins. Co. v. Earl, 33 N.E.3d 337, 340 (Ind. 2015). When a trial court's evidentiary ruling depends on the interpretation of a statute, case law, or a rule of evidence and not an "application [of those] to any particular set of facts", it presents a legal question we review de novo. See Cook v. Whitsell-Sherman, 796 N.E.2d 271, 277 (Ind. 2003) (citing Stahl v. State, 686 N.E.2d 89, 91 (Ind. 1997)). See also Allen v. Allen, 54 N.E.3d 344, 346 (Ind. 2016). Here we decide, first, whether the trial court properly interpreted and applied Stanley v. Walker; and, second, whether the court abused its discretion by excluding the reduced HIP rates under Evidence Rule 403.

**Discussion and Decision**

Indiana tort law seeks to make injured parties whole. "Compensatory tort damages 'are designed to place [plaintiffs] in a position substantially equivalent in a pecuniary way to that which [they] would have occupied had no tort been committed.'" Nichols v. Minnick, 885 N.E.2d 1, 4 (Ind. 2008) (quoting Restatement (Second) of Torts § 903 cmt. a (Am. Law Inst. 1979)). The compensatory tort damages at issue here are Lee's "special damages"—the tangible, measurable medical-services losses she sustained due to Patchett's negligence. The proper measure of such losses, as we reaffirmed in Stanley, is the "reasonable value" of necessary medical services. 906 N.E.2d at 858. Reasonable value is not measured simply by what the plaintiff spends out of pocket for such services. Even if the services are complimentary, the plaintiff is entitled to recoup their reasonable value. "Whenever it is proper in such a case to prove the services of a physician or surgeon, the fair value of such services is the legal rule, even though they might have been rendered gratuitously." City of Indianapolis v. Gaston, 58 Ind. 224, 227 (1877).

Reasonable value is the touchstone and may be proved a number of ways. One is to show the amounts billed for healthcare services. By rule, the billing statement is admissible to establish the charges are reasonable. "Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements are prima facie evidence that the charges are reasonable." Ind. Evidence Rule 413. This approach can be dispositive if the parties agree the medical charges are reasonable. As we explained in Cook, "[b]y permitting medical bills to serve as prima facie proof that the expenses are reasonable, the

4

rule eliminates the need for testimony on that often uncontested issue." 796 N.E.2d at 277. But if the parties contest the reasonableness of the charges, "the method outlined in Rule 413 is not the end of the story." Stanley, 906 N.E.2d at 856.

This brings us to our decision in Stanley v. Walker and its discussion of whether an alternative metric—specifically, the reduced amount that represents payment in full to a medical provider for services rendered—also is admissible to prove the reasonable value of those services, consistent with the collateral-source statute. The common-law collateral-source rule barred evidence of compensation plaintiffs received from collateral (non-party) sources. Id. at 854. Indiana's subsequent collateral-source statute abrogated our common-law rule and made evidence of collateral-source payments admissible, "except for specified exceptions." Id. at 855. In Stanley, we held "[t]he collateral source statute does not bar evidence of discounted amounts in order to determine the reasonable value of medical services", if insurance is not referenced. Id. at 858. Today, we hold, first, that the trial court misinterpreted Stanley by construing it to apply only to discounts negotiated at arm's length between a medical provider and an insurance company; and, second, that the court abused its discretion by excluding the reduced HIP reimbursements under Evidence Rule 403.

I. **Under <u>Stanley v. Walker</u>, reduced reimbursements accepted by healthcare providers are relevant, probative evidence of the reasonable value of medical services.**

Indiana's collateral-source statute remains essentially unchanged since our 2009 decision in Stanley v. Walker. In relevant part, the statute provides:

> Sec. 2. In a personal injury or wrongful death action, the court shall allow the admission into evidence of:
>
> (1)    Proof of collateral source payments other than:
>
> (A)    payments of life insurance or other death benefits;
> (B)    insurance benefits that the plaintiff or members of the plaintiff's family have paid for directly; or
> (C)    payments made by:
>
> (i)    the state or the United States; or
> (ii)    any agency, instrumentality, or subdivision of the state or the United States;

5

> that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought.

Ind. Code § 34-44-1-2(1) (2014 Repl.).

Lee argues these statutory provisions (particularly (B) and (C)(ii)) operate to exclude evidence of reduced HIP rates Patchett may seek to introduce. But in Stanley, we held that such reduced rates—whether characterized as "discounted amounts", "adjustments", or "accepted charges"—are admissible under the statute if they can be introduced without referencing their source. 906 N.E.2d at 858. Concluding that "it [is] difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services", id. at 857, we adopted a middle-ground approach where "both the original bill and the amount accepted are evidence relevant to [determining] the reasonable value of medical expenses." Id. (quoting Robinson v. Bates, 857 N.E.2d 1195, 1201 (Ohio 2006)).

### A. Stanley applies to all accepted reimbursements, regardless of whether they are negotiated or mandated.

Stanley has many factual and procedural similarities with this case. Stanley also involved a personal-injury suit arising from a motor-vehicle accident. The plaintiff (Walker) sustained injuries requiring medical treatment, and he sued the other driver (Stanley). The defendant conceded fault, and the parties went to trial on the issue of damages. At trial, the plaintiff introduced his redacted medical bills showing the amount originally billed ($11,570). The defendant then sought to admit medical bills showing the discounted amount the plaintiff's providers accepted as payment in full for services rendered ($6,820). The plaintiff objected, contending the collateral-source statute barred evidence of the discounted bills. The trial court sustained the objection. On appeal, we held that the collateral-source statute does not bar evidence of discounted amounts to determine the reasonable value medical services. Id. at 858.

The principal difference between Stanley and this case is the identity of the payer. In Stanley, the payer was a private insurance company. Here, it is HIP, a governmental program. The central issue is whether this difference requires a different result. No party or friend of the court asks us to reconsider Stanley. Both sides agree that Stanley and its interpretation of the collateral-source statute supply the answer. Patchett, 46 N.E.3d at 479-80. But each side offers a competing view of Stanley's implications. Lee argues that Stanley announced a narrow rule in which the only reductions or

discounts that may be admitted to prove the reasonableness of medical services are those negotiated at arm's length. In contrast, Patchett contends that <u>Stanley</u> pronounced a broader rule allowing the admissibility of any accepted health-care payments, regardless of whether the reduced reimbursements are negotiated or imposed by fiat.

We think the approach more faithful to <u>Stanley</u>'s holding and rationale is that which allows the factfinder to hear evidence of the reduced amounts a provider accepts as payment in full, even when the payer is a government healthcare program. The salient fact is not whether (or to what extent) the reimbursement rates were negotiated. What counts is that the participating provider has agreed to accept the lower rates as payment in full. 906 N.E.2d at 859 (Boehm, J., concurring) (stating that discounted prices generally "reflect the amounts that providers are willing to accept for their services.").

### B. A healthcare provider's continued participation in HIP denotes its acceptance of the program's terms.

Like Medicaid and Medicare, HIP is a voluntary program for healthcare providers; they need not participate. <u>See</u> Ind. Code §§ 12-15-11-2, 12-15-13-2(a)(2), 12-15-44.2-3 (2012 Repl.); 405 Ind. Admin. Code 5-4-1, 10-9-1. (2016); 42 U.S.C. § 1395cc(a)(1), (b) (2012). <u>See</u> <u>also</u> <u>Stayton v. Delaware Health Corp.</u>, 117 A.3d 521, 523–24 n.5 (Del. 2015); <u>Haygood v. De Escabedo</u>, 356 S.W.3d 390, 392–94 (Tex. 2011). Neither are participating providers indentured; they are free to leave these programs at any time. <u>See</u> <u>Indiana Medicaid for Providers</u>, (available at http://provider.indianamedicaid.com/become-a-provider/disenroll-from-the-ihcp.aspx) (last visited October 21, 2016). Some providers may grow weary of the red tape; others may find the reimbursements inadequate; still others may think the programs are too slow to pay. Whatever the motivation for leaving, the fact is that many providers can and do leave. <u>See</u> <u>id.</u>

The flipside is that many more providers remain in these programs. As of July 2016, the number of primary medical providers participating in HIP is 6,945. The Lewin Group, Indiana Healthy Indiana Plan 2.0: Interim Evaluation Report 30 (2016). Thousands more specialty providers also participate in HIP. <u>Id.</u> at 32–35 (Anthem Specialist Network for HIP 2.0 members includes 9,117 providers; MHS Specialist Network for HIP 2.0 members includes 5,706 providers; and MDwise Specialist Network for HIP 2.0 members includes 8,181 providers. A specialty provider

may be included in more than one network.). We infer from the low barriers to exit that providers that enroll and then remain in these programs are at least tacitly agreeable to the terms of participation, including the reimbursement rates.

Because participating providers accept these reduced rates in full satisfaction of services rendered, we hold such rates are relevant, probative evidence of the reasonable value of medical services. Relevant evidence is that which "has any tendency to make a [consequential] fact more or less probable than it would be without the evidence". Evid. R. 401; Houser v. State, 823 N.E.2d 693, 697 (Ind. 2005). Probative evidence "tends to prove or disprove a point in issue." BLACK'S LAW DICTIONARY (10th ed. 2014). The reduced amounts providers accept for medical care are not conclusive of reasonable value, but they are admissible to prove reasonable value.

### C. The trial court committed reversible error in holding that Stanley did not apply to accepted reimbursements from a government payer.

In excluding evidence of the reduced HIP rates, the trial court wrongly concluded that Stanley applied only to medical discounts negotiated between providers and insurers, and not more generally to any reimbursement rates accepted by providers as payment in full. It may well be true, as the trial court believed, that HIP rates reflect myriad considerations and are "based upon political and budget concerns as set forth in the statutes." But as we observed in Stanley:

> We recognize that the discount of a particular provider generally arises out of a contractual relationship with health insurers *or government agencies* and reflects a number of factors—not just the reasonable value of medical services. However, we believe that this evidence is of value in the fact-finding process leading to the determination of the reasonable value of medical services.

906 N.E.2d at 858 (emphasis added). As we have discussed, the overriding consideration is that participating providers have agreed to accept the reduced HIP rates as full payment. A provider's willing acceptance of these reduced amounts reinforces the Court's "belie[f] that this evidence is of value in the fact-finding process leading to a determination of the reasonable value of medical services." Id. The trial court's contrary holding, which excluded evidence of the reduced HIP's rates, was reversible error.

**D.** **Indiana continues to chart a middle course by admitting billed charges and accepted amounts.**

Since we decided <u>Stanley</u> in 2009, six states have precluded the admission of discounted reimbursements altogether, concluding that only the amount billed may be introduced to prove the reasonable value of medical services. <u>See</u> <u>Kenney v. Liston</u>, 760 S.E.2d 434 (W. Va. 2014); <u>Brethren Mut. Ins. Co. v. Suchoza</u>, 66 A.3d 1073 (Md. Ct. Spec. App. 2013); <u>Crossgrove v. Wal-Mart Stores, Inc.</u>, 280 P.3d 29 (Colo. App. 2010); <u>Law v. Griffith</u>, 930 N.E.2d 126 (Mass. 2010); <u>Swanson v. Brewster</u>, 784 N.W.2d 264 (Minn. 2010); <u>White v. Jubitz Corp.</u>, 219 P.3d 566 (Or. 2009). Two states, in contrast, have held that only the discounted amount actually paid for medical services is admissible to prove reasonable value. <u>See</u> <u>Stayton v. Delaware Health Corp.</u>, 117 A.3d 521 (Del. 2015); <u>Haygood v. De Escabedo</u>, 356 S.W.3d 390 (Tex. 2011). And two states have joined Indiana in admitting into evidence both the amount charged and the amount accepted. <u>See</u> <u>Howell v. Hamilton Meats & Provisions, Inc.</u>, 257 P.3d 1130 (Cal. 2011); <u>Martinez v. Milburn Enter. Inc.</u>, 233 P.3d 205 (Kan. 2010).

We continue to believe this middle ground not only represents the "fairest approach", <u>Stanley</u>, 906 N.E.2d at 858, but also honors our deep, abiding faith in the jury system. The framers of our state constitution enshrined the right to a jury trial for both criminal and civil cases. IND. CONST. art. 1, §§13(a), 20. Our faith in juries is borne out by our summary-judgment standard, according to which we "consciously" allow even "marginal cases [to] proceed to trial" to ensure parties receive their day in court. <u>Hughley v. State</u>, 15 N.E.3d 1000, 1004 (Ind. 2014). The hybrid approach we outlined in <u>Stanley</u> and reaffirm today allows the factfinder in a personal-injury case to consider both the amount originally billed and the reduced amount actually paid and accepted. We trust juries to consider these metrics, along with any other relevant measures of the reasonable value of medical care, in determining what damages are warranted in a particular case to make the plaintiff whole.

We are mindful that some may continue to view <u>Stanley</u> as a giant leap from the law prevailing at the time of its decision. But those arguments did not prevail in 2009 and, as we have mentioned, no party or friend of the court asks that we reconsider <u>Stanley</u> today. Moreover, in the seven years since we decided <u>Stanley</u>, the General Assembly has had the opportunity to revise the collateral-source statute to correct any misinterpretation by this Court. During that period, the

legislature has made exactly one (inconsequential) revision to the statute and no substantive change that would call <u>Stanley</u>'s rationale into question. 2010 Ind. Acts, P.L.1-2010, §139 (revising I.C. § 34-44-1-2(B) from "insurance benefits *for which* the plaintiff…" to "insurance benefits *that* the plaintiff…") (emphases added). Given <u>Stanley</u>, our ruling today is a small step implementing that rationale, which is that accepted reimbursements for medical services are probative, relevant evidence of reasonable value and are admissible if the payments' source is not referenced.

## II.    The trial court abused its discretion in excluding evidence of HIP discounts under Evidence Rule 403.

We also reverse the trial court's decision to exclude the reduced HIP rates under Evidence Rule 403. Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Although we give considerable deference to a court's exclusion of evidence under Rule 403, we hold that the court below abused its discretion in ruling that admission of the HIP rates would "only cause confusion to the jury on how such amounts should be used or considered." The record does not support excluding the accepted reimbursements under Rule 403.

We likewise doubt the record in most personal-injury cases will justify excluding such evidence under Rule 403, at least where the tort plaintiff has introduced the amount of billed medical charges under Rule 413. These opposing, complementary twin values—billed charges and accepted amounts—are the yin and yang of a personal-injury suit for damages where the issue is the reasonable value of necessary medical services. In such cases, parties should expect and courts should presume that the admission of billed provider charges will be accompanied by the admission of reduced amounts accepted by providers as payment in full.

To be clear, we do not hold that Rule 403 can *never* supply a proper basis for excluding the reduced amount a healthcare provider has accepted as full payment for medical services. But we imagine the permissible circumstances for excluding such evidence under Rule 403 will be few and far between.

## Conclusion

Stanley v. Walker made evidence of the reduced reimbursements a healthcare provider accepts as full payment for services rendered to be presumptively admissible in a personal-injury suit for damages concerning the reasonable value of necessary medical care. We hold that the trial court misinterpreted Stanley by holding the collateral-source statute required the exclusion of accepted reimbursements from government payers. Moreover, we find the court abused its discretion by excluding such evidence under Rule 403. We reverse and remand with instructions to allow Patchett to introduce evidence of the reduced HIP rates accepted by Lee's medical providers so long as Patchett can do so without referencing their source.

Rush, C.J., and Massa, J., concur.

Rucker, J., concurs in result with separate opinion in which David, J., joins.

**Rucker, J., Concurring in result.**

Largely for reasons the majority explains I agree "the *rationale* of <u>Stanley v. Walker</u> applies equally to reimbursements by government payers." Slip op. at 2 (emphasis added). I write separately however because I continue to believe <u>Stanley</u> was wrongly decided. <u>See</u> <u>generally</u> 906 N.E.2d 856, 860-867 (Dickson, J., dissenting opinion in which Rucker, J., concurred). More to the point, Indiana's collateral source statute could not be any clearer. It precludes admission into evidence of, among other things, "payments made by: i) the state or the United States; or ii) any agency, instrumentality, or subdivision of the state or the United States . . . . " Ind. Code § 34-44-1-2(c). Payments made by HIP—a federal/state government program—unquestionably fall within this prohibition. A contrary reading endorsed by <u>Stanley</u> and reaffirmed today simply cannot be reconciled with the collateral source statute.

Nonetheless neither party nor their aligned amici asks us to reconsider <u>Stanley</u>. And importantly, in the years since <u>Stanley</u> was decided, the legislature has not amended the collateral source statute in a way that demonstrates disapproval with this Court's judicial interpretation. Further, the landscape in the healthcare industry has not changed dramatically since <u>Stanley</u> was decided and thus our doctrine of *stare decisis* also militates against charting a different course. For these reasons I concur in the result reached by the majority.

David, J., concurs.